## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **TIMOTHY L. GOSA,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case. No.: 6:07-CV-948-JHH** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

### MEMORANDUM OPINION

Plaintiff, Timothy L. Gosa, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits under Titles II and XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).   For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

### I.      Proceedings Below

Plaintiff protectively filed his applications for a period of disability, DIB, and SSI on May 7, 2004, alleging a disability onset date of January 1, 2004, (R. 51-52, 432-37), which was later amended to January 31, 2004, (R. 465).  On August 11, 2004, Plaintiff's applications were denied initially and upon reconsideration.   (R. 23-29, 438-44).   At Plaintiff's request, (R. 30), an administrative hearing was conducted before an Administrative Law Judge ("ALJ") on October 18,

2005, (R. 445-52), and a supplemental hearing was held on July 25, 2006, (R. 453-98).  Plaintiff and

Vocational Experts ("VE") Karen Vessell and Thomas Elliott testified at the hearings.  (R. 445-98).

In the October 10, 2006 decision, the ALJ determined that Plaintiff was not eligible for a

period of disability, DIB, or SSI because he was not under a "disability," as defined by the Act, at

any time through the date of decision.  (R. 13-20).  After the Appeals Council denied Plaintiff's

request for review on April 3, 2007, (R. 6-8), that decision became the final decision of the

Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the hearing, Plaintiff was thirty-seven years old, a "younger" individual under

the statutory framework, with a seventh grade education.  (R. 433, 470-71).  He has past relevant

work experience as a heavy equipment operator (medium exertional level, semi-skilled), (R. 456);

lumbar yard production supervisor (light exertional level, semi-skilled), (R. 456-57); escort vehicle

driver (sedentary exertional level, unskilled), (R. 457); welder/assembler (medium exertional level,

skilled), (R. 458); furniture assembler (medium exertional level, semi-skilled), (R. 458-59); laborer

in a poultry plant (medium exertional level, unskilled), (R. 459); and loader for a furniture store

(heavy exertional level, semi-skilled), (R. 460-61).  According to Plaintiff, he has been unable to

engage in substantial gainful activity since January 31, 2004, as amended, (R. 474), when he became

unable to work due to seizure disorder, fairly controlled (R. 321-25, 367-84); depression (R. 360-65);

and borderline intellectual abilities, (R. 360-65).  (*See* Doc. # 8, at 2).

At the July 2006 supplemental administrative hearing, Plaintiff reported that he is able to

perform simple reading and writing tasks in addition to simple mathematical calculations like

adding, subtracting, and making change.  (R. 463).  According to Plaintiff, he completed the seventh

grade with the assistance of special education classes "all through school."  (R. 470-71).  Plaintiff

2

also reported that he can drive a car, although he seldom drives because of his seizure disorder (but he is not legally restricted from driving).  (R. 463).

Plaintiff's first seizure occurred on January 21, 2004, (R. 474), and despite taking an anti-seizure medication, (R. 481-82), he reports that he has continued having grand mal seizures since that time - averaging one seizure per week, (R. 475).  Plaintiff testified that he suffers from grogginess and headaches after each seizure and that it takes "a good day or two days" before he can "go[] about [his] business again."  (R. 475).  Approximately three times per week, Plaintiff also suffers from headaches independent from the seizures.  (R. 475-78).  After developing the seizure disorder, Plaintiff began experiencing depression, which resulted in two suicide attempts.  (R. 479-81).

Plaintiff testified that on a "good day" without a seizure or headache, he watches television, walks over to a neighbor's house for a visit, and prepares his meals.  (R. 486-87).  On days when he suffers from a seizure or headache, Plaintiff stated that he is "pretty much . . . .laid up all day."  (R. 487).  Plaintiff believes that his main impediment to work is "[t]he headaches.  The severity of them."  (R. 491).

## II.   ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis.  *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations (the "Listings").  Fourth, the Commissioner determines whether the claimant's residual functional

capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability on January 31, 2004, as amended. (R. 15, Finding No. 2). The ALJ found that, during the relevant time period, Plaintiff had the following medically determinable impairments, which he deemed to be "severe:" depression and seizures. (R. 15, Finding No. 3). Nevertheless, he determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 15-16, Finding No. 4).

4

According to the ALJ, Plaintiff's subjective complaints concerning his alleged impairments and their impact on his ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record.  (R. 15-16).  Specifically, the ALJ noted that the medical evidence, including records from Dr. Diane Warren (dated March 2004 through June 2004) and Dr. Arturo Otero (dated March 2004 through November 2004) indicated that Plaintiff's seizure disorder had responded favorably to medication. (R. 17).  The ALJ noted that Plaintiff's allegations regarding the severity and frequency of his seizures, in addition to his reports of headaches, were not confirmed by medical evidence and were instead based upon self-reporting.  (R. 17).   The ALJ recognized Plaintiff's diagnosis of major depressive disorder, but he noted that the condition responded well to medication and seemed to worsen only when Plaintiff stopped taking his prescribed medication.  (R. 17-18).

Thus, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work at all levels of exertion from sedentary to heavy, with certain environmental restrictions, due to his seizures, from working at unprotected heights, working around dangerous moving unguarded machinery, or commercially driving. (R. 16, Finding No. 5).  The ALJ also found that Plaintiff is further restricted from climbing ropes, ladders, and scaffolding.  (R. 16, Finding No. 5).   The ALJ noted that Plaintiff suffers from no more than moderate limitations in social functioning, activities of daily living, and concentration, persistence and pace. (R. 16, Finding No. 5).

The ALJ sought testimony from VE Thomas Elliott at the supplemental administrative hearing, and he posed several hypothetical questions to Mr. Elliott regarding different scenarios of functional capacity.  (R. 492; 16, Finding No. 5).  With Mr. Elliott's help, the ALJ determined that

Plaintiff is unable to perform any of his past relevant work, (R. 18, Finding No. 6), but he concluded that Plaintiff could perform work existing in significant numbers in the national economy, including occupations such as assembler of small parts, hardware assembler, and packing line worker, (R. 19-20, Finding No. 10; R. 493). Accordingly, the ALJ found that Plaintiff was not under a "disability," as defined by the Act, at any time through the date of decision. (R. 20, Finding No. 11).

III.    **Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 8, at 5-6). Plaintiff asserts only one reason why he believes that the ALJ's decision is not supported by substantial evidence and improper legal standards were applied -- he believes that his mental impairment meets or medically equals Section 12.05(C) of the Listings, which concerns mental retardation. (Doc. # 8, at 4-5).

IV.    **Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision

is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## V.    Discussion

Against that backdrop of applicable standards, the court rejects Plaintiff's argument for remand and/or reversal.  Plaintiff's only contention is that the ALJ erred by not concluding that his mental impairment meets or equals Listing 12.05(C).  As outlined earlier, Step Three of the sequential evaluation process *directs* a finding of disability if Plaintiff's impairments meet or equal a listed impairment. *See* 20 C.F.R. § 404.1520(d).  In other words, the Listings set forth conditions that are so severe that, if a listing is met or equaled, a plaintiff is considered disabled without regard to vocational considerations.  If a plaintiff contends that he *meets* a listing, that burden requires that he "present *specific medical findings* that meet the various tests listed under the description of the applicable impairment." *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir.1986)(emphasis added).  In the alternative, if a plaintiff "contends that he has an impairment which is *equal* to one of the listed impairments, [he] must present medical evidence which describes how the impairment has such an

7

equivalency." *Bell*, 796 F.2d at 1353 (emphasis added).[1]  In all cases, the plaintiff bears the burden to prove with *medical evidence* that, prior to the expiration of his insured status, he satisfied or equaled the requirements of a listing. *Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir.1987).

In this case, it is clear that the ALJ addressed Step Three of the sequential evaluation process and determined whether any of the Listings were applicable to Plaintiff's impairments.  The ALJ's decision specifically notes that "the record fails to show that [Plaintiff's] impairments are attended by any of the findings specified in Section 12.04 (Affective Disorders), Section 11.02 (Epilepsy-convulsive epilepsy), Section 11.03 (Epilepsy-non-convulsive epilepsy), and Section 11.05 (Benign brain tumors) of the listing of impairments."  (R. 16, Finding No. 4).  While Plaintiff is correct that the ALJ did not explicitly cite Listing 12.05(C) in his recitation of inapplicable listings,  (*see* Doc. # 8, at 4), that omission *alone* is not sufficient to warrant reversal.  An ALJ is not required to cite to particular regulations, cases, phrases, or formulations when outlining his findings and the rationale therefore.  *Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987).  Rather, an ALJ must only provide "sufficient recorded evidence of the *ratio decidendi* so that [a reviewing court] can determine on the merits whether a claim is 'rational and supported by substantial evidence.'" *Powell on Behalf of Powell v. Heckler*, 773 F.2d 1572, 1576 (11th Cir. 1985)(quoting *Cowart v. Schweiker*,

---

[1] Medical equivalence will be found when "the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526(a). Medical equivalence is based upon medical evidence only, and "[a]ny medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b). The Supreme Court has held that: [f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

662 F.2d 731, 735 (11th Cir. 1981)).   When it comes to the Listings, the burden is on *Plaintiff* to present medical evidence implicating a particular listing.   For the reasons outlined below, Plaintiff has failed to satisfy that burden with respect to Listing 12.05(C).

Listing 12.05, the listing category for mental retardation, begins with an introductory paragraph, which states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. The Listing further provides that the "required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." *Id.* In this case, Plaintiff claims that he meets or equals Subsection C of Listing 12.05, which requires that he demonstrate "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* at § 12.05(C).

Importantly, "[t]he structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings." *Id.* at § 12.00A.   Because "Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation . . . . [in addition to] four sets of criteria (paragraphs A through D) . . . . [Plaintiff's] impairment [must] satisf[y] the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria . . . [to] meet[] the listing.   *Id.* at § 12.00A (emphasis added).   As the Eleventh Circuit recently clarified in an unpublished opinion:

> We have determined that, to be considered for disability benefits under Listing 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive functioning; and (3) have manifested deficits

in adaptive behavior before age 22. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir.1997). In addition, for presumptive disability under 12.05C, the claimant must have (1) a valid IQ score of 60 through 70 inclusive, and (2) an additional mental or physical impairment significantly affecting the claimant's ability to work. *Id.* at 1219-1220.

*Pettus v. Astrue*, 226 Fed.Appx. 946, 948 (11th Cir. 2007).[2]

As outlined above, meeting Listing 12.05(C) is more nuanced than it may appear on first glance. Unfortunately for Plaintiff, his arguments to this court focus on the second half of Subsection C's requirements - whether "an additional mental or physical impairment significantly affect[ed his] ability to work - without addressing the threshold requirements imposed by the introductory paragraph to Listing 12.05. (*See* Doc. # 8, at 5). Those threshold requirements are fatal to Plaintiff's claim.

Indeed, substantial evidence indicates that Plaintiff's condition fails to meet or equal the introductory requirements of Listing 12.05(C). (R. 15-16, Finding No. 4). First, the record is devoid of any evidence that Plaintiff has ever been diagnosed with mental retardation. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 1987)(emphasizing that in order to meet a listing, a claimant "must have a diagnosis included in the Listings"). When Dr. Alan Blotcky, a consultative psychologist, administered the WAIS-III testing to Plaintiff on September 8, 2005, Plaintiff obtained a verbal IQ score of 70, a performance IQ score of 75 and a full scale IQ score of 70. (R. 361). Based on his professional analysis of the IQ scores and other evidence, Dr. Blotcky concluded that

---

[2] As the Commissioner points out, accepted medical standards also recognize that a diagnosis of mental retardation must be based on deficits in adaptive functioning as well as IQ scores. (Doc. # 10, at 8 n.1)(*citing* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 42 (4th ed. Rev. 2000) (DSM-IV-TR) ("Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning. . . . Impairments in adaptive functioning, rather than a low IQ, are usually the presenting symptoms in individuals with Mental Retardation.")).

Plaintiff had borderline intellectual functioning, not mental retardation. (R. 362).  Although Plaintiff points to evidence that he only attained education at the seventh grade level, and allegedly attended Special Education classes, (R. 470-471), Dr. Blotcky had that information before him when he made his diagnosis.  In fact, Dr. Blotcky's report specifically notes that he reviewed Plaintiff's school records, (R. 360), before indicating his medical determination that Plaintiff did not exhibit intellectual deficits indicative of mental retardation.

Moreover, the record lacks evidence that Plaintiff suffers from deficits in adaptive functioning, as required by the introductory paragraph to Listing 12.05(C).  *See Crayton*, 120 F.3d at 1219.  Although Plaintiff's IQ score of "70" falls within the range outlined in Subsection C as "significantly subaverage general intellectual functioning," an IQ score standing alone is not enough to satisfy the Listing.  Absent evidence that such a score translates into *actual* deficits in adaptive behavior, Plaintiff's IQ score is not conclusive evidence of mental retardation.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05; *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (finding that "a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior"); *see also* DSM-IV-TR at 41-42.

In fact, Plaintiff's IQ score is inconsistent with the record evidence related to his adaptive functioning.  First, Dr. Blotcky observed that - despite Plaintiff's IQ score of 70 - he demonstrated logical and orderly thinking, accurate memory functioning, intact judgment, and fair to good insight. (R. 361).  Moreover, Dr. Norman Huggins, who examined Plaintiff before completing a "Medical Source Opinion (Mental)" in April 2006, also found that Plaintiff was able to function quite well when he noted that Plaintiff interacted in a socially appropriate manner, readily answered questions

with detailed content relevant to the questions asked of him, exhibited goal-directed thinking and good continuity of ideas, displayed logical and coherent thoughts, and was able to recall details and sequences of past and current events. (R. 410-13).  In fact, Dr. Huggins concluded that Plaintiff exhibited no significant impairment with regard to verbal communication, memory, or cognitive function. (R. 411-13).  Finally, Plaintiff's ability to perform his past relevant semi-skilled and skilled jobs as a lumbar yard supervisor, a furniture assembly supervisor, a heavy equipment operator, a welder assembler, and a furniture loader further suggests that Plaintiff did not manifest any deficits in adaptive functioning due to a mental condition. (R. 456- 458, 461).

Thus, the court concludes that, given the absence of any evidence of adaptive deficits, Plaintiff's IQ score of 70 is simply not sufficient to fulfill the requirements of Listing 12.05(C). *See Lowery*, 979 F.2d at 837; DSM-IV-TR at 42; *see also Milner v. Barnhart,* 275 Fed.Appx. 947, 948 (11th Cir. 2008)(finding that "substantial evidence supports the ALJ's finding that [plaintiff] did not meet Listing 12.05(C) because [her] IQ score of 67 was inconsistent with her daily activities and behavior, and her severe mental impairment of schizophrenia was controlled by medication and did not significantly interfere with her ability to maintain daily living activities, function socially, or maintain concentration").[3] Although the ALJ's opinion lacked a step-by-step analysis of whether Plaintiff met or equaled Listing 12.05(C), this court will not disturb his ultimate conclusion that no

---

[3] For the same reasons that Plaintiff failed to meet the requirements of Listing 12.05(C), he also failed to establish medical equivalence to Listing 12.05(C).  In deciding whether a claimant has the medical equivalence of a listing, the ALJ must consider the combined effects of impairments on functional capacity in determining whether the listing is equaled.  *Davis*, 985 F.2d at 533-34.  The court concludes that the ALJ properly considered the combined effects of Plaintiff's impairments on his functional capacity and did not err in concluding that Plaintiff's conditions did not medically equal any of the listings, including Listing 12.05(C).  Dr. Blotcky's report and diagnosis, as well as the other evidence in the record, provide substantial evidence to support the ALJ's decision that Plaintiff's impairments did not meet or equal Listing 12.05.

listing was established because, for the reasons outlined above, that conclusion was appropriate, guided by proper legal standards, and supported by substantial evidence.[4]

## VI.    Conclusion

Thus, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** this the ___5th___ day of May, 2009.

_James H. Hancock_
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] If the record evidence suggested that it was a close call as to whether Listing 12.05(C) was met, this would be a very different case.  *Compare Neal M. Hughes v. Commissioner of Social Security*, 3:07-cv-00613-JHH, Doc. # 15 (September 23, 2008), at 7-11 ("The only portion of the ALJ's opinion addressing whether Plaintiff satisfies the requirements of Listing 14.08 summarily states that the '[m]edical record indicates that laboratory test results and other medical records indicate that the claimant's impairment does not meet the requirement of Listing 14.08 regarding human immunodeficiency virus (HIV).'  . . . To the contrary, the medical evidence certainly intimates Listing 14.08, if not satisfies it. . . . Accordingly, given the lack of clarity in the ALJ's decision, and considering the amount of record evidence related to Listing 14.08 that must be analyzed in the context of that Listing's requirements, the court is left with no choice but to remand this case with instructions to evaluate whether Plaintiff satisfies the requirements of Listing 14.08, including procuring additional medical expert testimony, if necessary, to determine whether this Listing is met or equaled.").  But this is not a close call.  It is patently obvious that the record lacks either "specific medical findings" meeting Listing 12.05(C) or, at the least, medical evidence demonstrating equivalency to that Listing.  *Bell*, 796 F.2d at 1353.